# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SABREE SHARRIEFF, | : | CIVIL NO. 3:CV-10-2448 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| SHIRLEY MOORE, *et al.*, | : | |
| Defendants | : | |

FILED
SCRANTON
OCT 18 2013
PER_____
DEPUTY CLERK

## MEMORANDUM

Plaintiff Sabree Sharrieff ("plaintiff"), a Pennsylvania state inmate who, at all times relevant, was housed at the State Correctional Institution at Frackville ("SCI-Frackville"), Pennsylvania, and the State Correctional Institution at Smithfield ("SCI-Smithfield"), Huntingdon, Pennsylvania, commenced this civil rights action on November 26, 2010. (Doc. 1.) Named as defendants are the following individuals: Shirley Moore Smeal ("Moore"), identified by plaintiff as Shirley Moore, former Deputy Secretary for the Eastern Region; Donald Kelchner ("Kelchner"), alleged to have been the "Supervising Superintendent of the Department"; Kenneth Hollibaugh ("Hollibaugh"), former Staff Assistant for the Eastern Region; Robert D. Shannon ("Shannon"), former Superintendent at SCI-Frackville; Sharon Burks ("Burks"), former Chief Grievance Officer; Brenda Tritt ("Tritt"), former SCI-Frackville Corrections Classification and Program Manager; David Kneal ("Kneal"), former Security Captain at SCI-Frackville; Larry Liggitt ("Liggitt"), SCI-Frackville Facility Chaplaincy Program Director; Barry Brown ("Brown"), former SCI-Frackville Facility Chaplaincy Program Director; and Ulrich Klemm ("Klemm"), Department Administrator for

Religious and Family Services. (Doc. 1, ¶¶ 5-14.)

Before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) which will be granted in part and denied in part. (Doc. 22.) Also pending is plaintiff's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) which will be construed as plaintiff's surreply. (Doc. 36.)

I. **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000). "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citation omitted). The federal rules allow for liberal

amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).

II. **Pertinent Allegations of the Complaint** [1]

Plaintiff alleges that he follows the faith of Islam "taught by the Honorable Elijah Muhammad via Muhammad's Temples of Islam/Nation of Islam ('MTI/NOI')." (Doc. 1, ¶ 15.) On November 1, 2006, while incarcerated at SCI-Frackville, plaintiff sent a request to defendant Shannon for permission to officially observe the December Fast "as observed by all Muslims under the fellowship of the Honorable Elijah Muhammad (PHUB)." (Id. at ¶ 15(a).) The request was denied the same day. (Id.) On November 2, 2006, plaintiff forwarded a religious accommodation request to defendant Brown. (Id. at ¶ 15(b).) The request was denied on November 16, 2006. (Id. at ¶ 15(c).)

On November 20, 2006, plaintiff submitted an inmate grievance concerning the denial of his request for accommodation for the December fast. (Doc. 1, at ¶ 15(d).) On November 27, 2006, defendant Tritt denied the grievance and forwarded to plaintiff a DC-52 religious accommodation request for plaintiff to submit on his own. (Id. at ¶ 15(e).) Plaintiff appealed the grievance to defendant Shannon, who denied the request on December 4, 2006. (Id. at ¶ 15(f).) On December 13, 2006, he filed a final appeal and, on January 18, 2007, the appeal

---

[1] Included in the complaint is also a retaliation claim that was subsequently withdrawn by plaintiff. (Doc. 21, ¶ 3.)

4

was denied by defendant Burks. (Id. at ¶ 15(g).) "On March 19, 2007, Moore concurred with the recommendation of Judy Viglione, Director Bureau of Inmate Services, denying plaintiff's request for religious accommodations." (Id. at ¶ 15(h).)

In June 2007, plaintiff submitted another request for religious accommodation to defendant Kelchner. (Doc. 1, ¶ 15(i).) The request was denied on August 6, 2007 by defendant Hollibaugh. (Id.) Another request was sent on November 9, 2008. (Id. at ¶ 15(l).) On February 12, 2009, his request was denied by defendant Liggitt. (Id. at ¶ 15(n).)

On March 3, 2009, plaintiff was transferred to SCI-Smithfield. (Doc. 1, ¶ 15(p).) On June 1, 2009, plaintiff submitted a DC-52, Inmate Religious Accommodation Request for religious services and annual fasting accommodations for the month of December. (Id. at ¶ 15(u).) The complaint lacks any information as to the outcome of this request.

On January 12, 2010, he was transferred back to SCI-Frackville.

He filed the instant action alleging that the denial of religious services and annual fasting accommodations violates his rights under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). (Doc. 1, ¶ 18.)

III. Discussion

A. Eleventh Amendment

Under the Eleventh Amendment, states and state agencies are immune from suit in federal court. See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S.

5

139, 144 (1993). "Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, see PA. STAT. ANN., tit. 71, § 61, it shares in the Commonwealth's Eleventh Amendment immunity." See Lavia v. Pennsylvania Dep't of Corrs., 224 F.3d 190, 195 (3d Cir. 2000). While a state may lose its immunity by Congressional abrogation or by waiver, see id., Congress did not abrogate states' sovereign immunity when it enacted 42 U.S.C. § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989). Moreover, the Pennsylvania legislature has expressly declined to waive its sovereign immunity by statute. See Lavia, 224 F.3d at 195; see also 42 PA. CONS. STAT. ANN. § 8521(b). The Eleventh Amendment prohibits a lawsuit against defendants sued in their official capacities because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury. Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990). Therefore, any claims against defendants in their official capacity will be dismissed.

### B. Statute of Limitations

Federal civil rights statutes do not contain a specific statute of limitations for § 1983 actions. Therefore, the district court utilizes the appropriate state statute of limitations. See Wallace v. Kato, 549 U.S. 384, 387-88 (2007). "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009); see 42 PA. CONS. STAT. ANN. § 5524(2). A cause of action accrues when a plaintiff knew or should have known he was harmed. See Garvin v. City of Phila., 354 F.3d 215 (3d Cir.

2003).

Plaintiff initially sought accommodation in November 2006, while incarcerated at SCI-Frackville. The request proceeded through administrative channels and, according to the allegations of the complaint, was finally denied on March 19, 2007. (Doc. 1, ¶ 15(h).) Another request for accommodation was submitted in June of 2007, which was denied on August 7, 2007. Defendants seek dismissal of these claims arguing that "there is no question that plaintiff was aware of any alleged injury when plaintiff's requests for religious accommodations were denied." (Doc. 23, at 8.) Plaintiff counters that he originally sought relief in state court and that the cause of action did not fully accrue until March 21, 2010, when defendants were awarded summary judgment in the state court action. (Doc. 8-10.)

It is clear that plaintiff knew or should have known that he was harmed with respect to the November 2006 request on or about March 19, 2007, when the request was denied, and that any claim concerning the June 2007 request arose on or about August 6, 2007, the date that request was denied. The fact that plaintiff filed an action in state court is evidence that he was fully aware of the harm he allegedly suffered. It is undisputed that this action was not commenced until November 26, 2010, well after the statute of limitations expired. Consequently, the claims against defendants Shannon, Brown, Burks, Moore, Kelchner, Tritt, and Hollibaugh are barred by the statute of limitations and are subject to dismissal.

With the dismissal of the above claims, the only accommodation request that remains to be litigated is the request that was sent on November 9, 2008, and denied on February 12,

2009.

## C. Personal Involvement

Defendant Klemm seeks to dismiss the claims against him based on plaintiff's failure to set forth sufficient allegations of his personal involvement in the alleged wrongful conduct. Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

Plaintiff alleges that he was deprived his "rights to religious services and annual (December) fasting accommodations as a direct result of the Department's favor of other religious faiths over Islam as taught by the Honorable Elijah Muhammad via Muhammad's

8

Temples of Islam/Nation of Islam ('MTI/NOI')." (Doc. 1, ¶ 15.) He further alleges that defendant Klemm is sued in his capacity as the Central Administrator for Religious and Family Services for the Pennsylvania Department of Corrections. (Id., at ¶ 8.) Although admittedly scant, the allegations are sufficient to withstand a motion to dismiss.

**D.    First and Fourteenth Amendment Claims**

1.    First Amendment

The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Although prisoners must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment, Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972), imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion. O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987). It is well-established that only those beliefs which are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection. Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Dehart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000); Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981) (describing three indicia of religion (1) an attempt to address "fundamental and ultimate questions" involving "deep and imponderable matters"; (2) a comprehensive belief system; and (3) the presence of formal and external signs like clergy

and observance of holidays.) It is undisputed that plaintiff's sincerely held religious beliefs are entitled to Constitutional protection.

Whether an inmate's free exercise of religion has been impermissibly burdened is governed by the four-part test set forth by the Supreme Court in Turner, 482 U.S. 78. Specifically, Turner instructs courts to weigh four factors when applying this standard: (1) whether the regulation or practice bears a "valid, rational connection" to a legitimate and neutral governmental objective; (2) whether prisoners have alternative ways of exercising the circumscribed right; (3) whether accommodating the right would have a deleterious impact on other inmates, guards, and the allocation of prison resources generally; and (4) whether alternatives exist that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. Id. at 89-91.

Because the Turner analysis is exceedingly fact-intensive, it does not lend itself to resolution on a motion to dismiss. See Ramirez v. Pugh, 379 F.3d 122, 128, 130 (3d Cir. 2004) (stating that "[W]e repeat our observation that we have historically viewed these inquiries as being fact-intensive . . . [requiring] a contextual, record-sensitive analysis" and finding that the district court erred in evaluating the constitutionality of the challenged policy or action under Turner's first prong on a motion to dismiss, "without any analysis or inquiry into the interests involved and the connection between those interests and the restriction at issue."); Wolf v. Reno, 297 F.3d 305, 308 (3d Cir. 2002); Wolfe v. Ashcroft, 297 F.3d 305, 308 (3d Cir. 2002). Therefore, plaintiff's First Amendment claim will proceed.

10

## 2. Fourteenth Amendment

The Fourteenth Amendment Equal Protection Clause guarantees all citizens "equal protection of the laws," meaning that similarly situated people must be treated the same. U.S. Const. amend. XIV. Generally, prison officials cannot discriminate against inmates of different religions. Cruz v. Beto, 405 U.S. 319 (1972) (per curiam). When an inmate asserts an equal protection claim based on the allegedly disparate treatment of different religious groups, the governing standard is whether the disparate treatment is " 'reasonably related to legitimate penological interests.' " DeHart v. Horn, 227 F.3d 47, 61 (3d Cir. 2000). Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable." Al–Alamin v. Gramley, 926 F.2d 680, 686 (7th Cir. 1991) (citations omitted).

In alleging that his Equal Protection rights were violated when he was deprived of rights to religious services and fasting accommodations as a direct result of the "Department's favor of other religious faiths over Islam as taught by The Honorable Elijah Muhammad via Muhammad's Temples of Islam/Nation of Islam ("MTI/NOI")," plaintiff has asserted a claim for religious discrimination that is "plausible" on its face. Thus, the Court declines to dismiss this claim.

### E. RLUIPA

Section 3 of Religious Land Use and Institutionalized Persons Act of 2000 provides,

11

in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); see also Cutter v. Wilkinson, 544 U.S. 709, 715 (2005).

Discussion of plaintiff's RLUIPA claim is not included in defendants' motion, which is understandable given the Court's Order of April 28, 2011 which states that "[t]he matter will proceed on the 'sole question of whether [he] was deprived of his First and Fourteenth Amendment rights to religious services and annual (December) fasting accommodations.'" (Doc. 21, ¶ 4, citing Doc. 20, ¶ 3.) However, it is clear from a reading of the complaint that plaintiff alleges a RLUIPA claim. It is equally clear that while plaintiff expressly withdrew his retaliation claim in his motion to alter or amend (Doc. 20, ¶ 3), there is no indication that he intended to withdraw his RLUIPA claim. Consequently, it, too, will proceed.

## IV. Conclusion

Based on the foregoing, defendants' motion to dismiss (Doc. 22) will be granted in part and denied in part. Plaintiff's motion for judgment on the pleadings (Doc. 36) will be construed as a surreply.

An appropriate order follows.

                                            **BY THE COURT:**

                                            **s/James M. Munley**
                                            **JUDGE JAMES M. MUNLEY**
                                            **United States District Court**

Dated: October 18, 2013